UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

           Plaintiff,

v.

LARRY W. HARRIS,

           Defendant.

Case No. 00-CR-50-JPS

**ORDER**

### 1. BACKGROUND

On June 15, 2020, Defendant filed a motion for compassionate release and a motion to appoint counsel. (Docket #55). Subsequently, the Court referred this matter to Federal Defender Services ("FDS") for review. (Docket #56). Both FDS, on Defendant's behalf, and the Government filed unopposed motions in support of Defendant's compassionate release. (Docket #61, #62). The Court, having reviewed both parties' submissions, grants both motions and reduces Defendant's term of imprisonment to time served.[1]

### 2. FACTS

Defendant, now seventy-one years old, has spent a considerable amount of time in prison. In 2000, he was found guilty of bank robbery, under 18 U.S.C. § 2113(a), and the Court sentenced him to 210 months of imprisonment followed by 3 years of supervised release. (Docket #61 at 1). However, Defendant did not begin serving *this* sentence until 2015 because

---

[1] Because the Court referred this matter to FDS, which then intervened on Defendant's behalf, the Court also denies Defendant's original motion to appoint counsel and for release as moot. (Docket #55).

from approximately 1998 to 2015, he remained in the custody of the Wisconsin Department of Corrections ("DOC") for robbing a Milwaukee dry cleaning store. (Docket #62 at 2–3).

While incarcerated, staff expressed concerns that Defendant might have prostate cancer. (*Id.* at 3). In 2016, a biopsy confirmed that Defendant did in fact have an aggressive Stage IV cancer and that his prognosis was poor. (*Id.* at 4). Although for a time Defendant's treatment appeared promising, allowing him to turn his attention to his other medical issues, Defendant's cancer returned in 2019. (*Id.* at 4–5). Unfortunately, Defendant's June 2, 2020 biopsy revealed "not only had the cancer returned, but it had metastasized to his skull and sacrum." (*Id.* at 5). As there is no treatment for cancer at this stage, Defendant has a life expectancy of less than two years *if* he receives medication. (*Id.*)

In addition to his metastatic cancer, Defendant also suffers from several other medical issues, such as Type II diabetes, obesity, hyperlipidemia, hypertension, asthma, and heart issues. (*Id.* at 2, 8; Docket #55 at 1). Upon his release, he would spend the remainder of his life in Milwaukee with his family.

### 3. LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A)(i), the Court can modify a term of imprisonment "upon motion of the Director of the Bureau of Prisons" if "extraordinary and compelling reasons warrant such a reduction." The reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission." *Id*. § 3582(c)(1)(A).

The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "the defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with

an end of life trajectory)." U.S.S.G. § 1B1.13 cmt. n.1(A)(i). The Commission includes "metastatic solid-tumor cancer" as its first example of a terminal illness. *Id.*

The Sentencing Guidelines' policy statement also requires that the Court determine whether "the defendant is not a danger" to others or the community "as provided in 18 U.S.C. § 3142(g).

Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. *Id.* Pursuant to § 3553(a), when determining the sentence to be imposed the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

### 4. ANALYSIS

The Director of the Federal Bureau of Prisons, through its attorneys, the United States Attorney for the Eastern District of Wisconsin, moved the Court to modify Defendant's term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). Therefore, this first requirement is satisfied. The Court goes on to evaluate whether Defendant has an extraordinary and compelling reason warranting his compassionate release.

As discussed in Section 3, *infra*, the Sentencing Commission explicitly states that a defendant's terminal illness is an extraordinary and compelling reason. Not only does Defendant have a terminal illness with an "end of life trajectory," Defendant has the very first terminal illness mentioned by the Commission: metastatic cancer. U.S.S.G. § 1B1.13 cmt.

n.1(A)(i). Defendant has a couple of years of life left *if* he receives medication. Without medication, his life expectancy is three months. (Docket #61 at 1–2). There is no doubt that Defendant satisfies this requirement based on this diagnosis alone.[2]

Lastly, after considering the factors set forth in 18 U.S.C. § 3553(a), "Imposition of a sentence," and whether Defendant's release poses a danger to the community or others, the Court reduces Defendant's sentence to time served followed by 3 years of supervised release. Defendant committed the relevant offense 21 years ago. Although he has only served approximately five years of his 17.5 year sentence, immediately prior to being transferred to the federal prison system he had been in custody of the Wisconsin DOC for 17 years. While Defendant has not served a substantial amount of time for his federal offense, the Court recognizes that he has spent roughly 20 years behind bars. Should Defendant violate his conditions of supervised release, he would return to prison for the last years of his life. The Court suspects that the prospect of spending his remaining days in prison is a strong deterrent for Defendant. *See United States v. Rainone*, Case No. 09 CR 206-1, 2020 WL 3468307, at *3 (N.D. Ill. June 19, 2020) (granting supervised release to an elderly defendant with medical

---

[2]For this reason, the Court need not analyze the impact of COVID-19 on Defendant's cancer diagnosis or any of his other conditions. However, the Court well appreciates the fact that persons with cancer, Type II diabetes, obesity, and heart conditions are at an increased risk of severe illness from COVID-19. *See* Ctrs. for Disease Control and Prevention, *Coronavirus Disease 2019* (COVID-19): *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 22, 2020).

issues that increased his susceptibility to COVID-19, notwithstanding that the defendant had served less than half of his federal sentence. The court noted that the defendant "had served eleven years between his state and federal sentences . . . and the deterrent value of keeping [the defendant] incarcerated" was "minimal.").

The Court is also satisfied that Defendant's release will not jeopardize the safety of the community. Defendant has not had any disciplinary issues while incarcerated. (Docket #62 at 8). Defendant took classes and worked, when physically able, as an orderly. (*Id.* at 9) He also completed a non-residential substance abuse program while incarcerated. *Id.* In support of his release, a prison social worker remarked that Defendant "had been in pain a long time," and that he was "not going to hurt anyone." (*Id.* at 11). This statement, in addition to Defendant's efforts to better himself notwithstanding his physical ailments and limitations, shows the Court that Defendant is not the same person he was back in 1999.

Additionally, the Court notes that Defendant's age and infirmity are factors weighing against the likelihood he will reoffend or be a danger to the community. *See Rainone*, 2020 WL 3468307, at *3. ("It is commonly known that recidivism reduces with age, and statistically [the defendant's] age bracket makes him less likely to reoffend."); *United States v. Wong Chi Fai*, 93-CR-1340 (RJD), 2019 WL 3428504, at *3 (E.D.N.Y. July 30, 2019) (noting that the terminally ill defendant was unlikely to be a danger to the community, in part, because he was "frail," "required a walker," and "could barely eat on his own."). Defendant will also have the support and care of family upon his release.

Lastly, the Court finds it telling that the Government brings a motion in support of Defendant's release.

Page 5 of 6
Case 2:00-cr-00050-JPS   Filed 07/27/20   Page 5 of 6   Document 63

Therefore, the Court grants both Defendant's and the Government's motions for Defendant's compassionate release. (Docket #61, #62). Defendant's sentence shall be reduced to time served and he shall serve 3 years of supervised release.[3]

Accordingly,

**IT IS ORDERED** that the Government's and FDS's motions for compassionate release (Docket #61, #62) be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant's original motion for appointment of counsel and for compassionate release (Docket #55) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant Larry W. Harris's term of imprisonment is reduced to "time served"; and

**IT IS FURTHER ORDERED** that the Bureau of Prisons take all steps necessary to immediately release Defendant Larry W. Harris from incarceration pursuant to the amended judgment, which follows.

Dated at Milwaukee, Wisconsin, this 27th day of July, 2020.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge

---

[3] In its forthcoming amended judgment, the Court updates Defendant's original conditions of supervised release, (Docket #39), to comport with current Seventh Circuit case law. The Court also modifies some conditions of release in light of Defendant's current circumstances.